**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

ALESHIA R. PARKER,

    Plaintiff,

v.                                                    Action No. 2:13cv00710

EYE SURGERY LIMITED, LLC ET ALL.,

    Defendant.

## REPORT & RECOMMENDATION

This matter comes before the Court on a 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief can be granted, by Defendants Peggy Dehne and Martin Casey ("Supervisory Defendants"). ECF No. 26. For the reasons stated herein, the undersigned RECOMMENDS that Supervisory Defendants' motion be GRANTED, and the complaint be dismissed regarding Defendant Peggy Dehne in her individual and official capacity, and dismissed regarding Defendant Martin Casey in his individual and official capacity.[1]

### I. BACKGROUND

**A. Procedural History**

On March 5, 2013, Aleshia Martin ("Plaintiff") filed an EEOC complaint against Virginia Center for Eye Surgery ("VCES") and Beach Eye Care, Inc. ("BEC"). ECF No. 4 ¶ 14. On September 25, 2013, the EEOC issued Plaintiff a 90 Day Notice of Right to Sue. ECF No. 4 ¶ 14. On December 23, 2013, Plaintiff filed a motion to proceed in forma pauperis, which was

---

[1] This complaint is not dismissed regarding defendants Virginia Center for Eye Surgery or Beach Eye Care.

granted on January 2, 2014. ECF Nos. 1; 3. Plaintiff then filed a Complaint against VCES, BEC, and both Peggy Dehne and Martin Casey in their individual capacities and official capacities. ECF No. 4. On February 19, 2014, Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 8, 9. On March 3, 2014, Plaintiff filed her Cross Motion to Amend and Brief in Opposition to Defendants' Motion to Dismiss. ECF Nos. 13, 14. Defendants filed a Reply to Plaintiff's Brief in Opposition, on March 6, 2014. ECF No. 15.

Magistrate Judge Tommy Miller conducted a hearing on Defendants' Motion to Dismiss and Plaintiff's Cross Motion to Amend on May 29, 2014, allowing Plaintiff to conduct depositions of up to three individuals on factors of employment, and ordering Defendants to file a Supplemental Motion to Dismiss. ECF Nos. 21, 22. On Sept 10, 2014, Defendants withdrew their February 19 Motion to Dismiss, and filed a renewed Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and memorandum in support. ECF Nos. 25, 26.

An evidentiary hearing was held before Magistrate Judge Tommy Miller on Tuesday, October 07, 2014, and upon discovery of controlling precedent, Defendants moved to convert their 12(b)(1) motion to dismiss for lack of subject matter jurisdiction into a Rule 56 motion for summary judgment. Judge Miller DENIED this motion to convert, without prejudice to refiling as a Rule 56 motion. ECF No. 30. Defendants therefore withdrew their 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, and oral arguments were presented on the remaining 12(b)(6) motions related to personal supervisor liability and exhaustion of administrative remedies. ECF No. 30.

On October 8, 2014, Plaintiff filed a Proposed Amended complaint, with more allegations relevant to the pending motion to dismiss for failure to state a claim. ECF No. 31.

**B. Factual Background**

Plaintiff was hired by Virginia Center for Eye Surgery ("VCES") on September 9, 2011 to be a medical Administrative Assistant. ECF No 4 ¶ 18; Casey Dep. 17:12-15. Peggy Dehne, the nursing clinical director for VCES, was Plaintiff's direct supervisor. ECF No. 4 at ¶¶ 21, 22; Casey Dep. 9:1-2; Dr. G. Peyton Neatrour Dep. 20:8-14. Martin Casey, the administrator of VCES, was Plaintiff's senior manager. ECF No. 4 at ¶¶ 21, 22; Dr. G. Peyton Neatrour Dep. 20:8-14. Both Dehne and Casey were involved in the decisions of hiring, reviewing, disciplining, and firing Plaintiff. ECF No. 4 at ¶¶ 39-47; Casey Dep. 20:13-21:8; 34:1-5; 34:12-24; 35:8-36:5; Parker Dep. 53:18-25. Plaintiff understood her duties to include "receiving patients, data entry, answering phone calls, collecting payments, scheduling surgeries, cancelling appointments and other administrative duties." ECF No. 4 at ¶ 19; Parker Dep. 9:22-10:14. In February 2012, Plaintiff received a positive performance review. ECF No. 4 ¶ 32.

On April 25, 2012, for "Administrative Professionals Day," Plaintiff received a certificate of appreciation thanking her for her hard work. ECF No. 4 at ¶ 33, Exhibit 5. On or about May 29, 2012, Plaintiff informed Dehne that she was pregnant. ECF No. 4 ¶ 34. Plaintiff alleges that Dehne made offensive and discriminatory comments about Plaintiff's pregnancy, including asking her why she had gotten pregnant, and telling her that she should have used birth control. ECF No. 4 ¶¶ 35-36. Plaintiff alleges that Dehne told another employee that Plaintiff was irresponsible for getting pregnant, and that Dehne did not expect her to return to work after having the baby, because she did not think that Plaintiff could afford to pay for daycare. ECF No. 4 ¶¶ 37-38. Plaintiff alleges that she was treated differently from non-pregnant employees after she announced her pregnancy. ECF No. 4 ¶¶ 39-49. Specifically, Plaintiff alleges that she was required to send emails to her supervisor with an explanation whenever she was late for

work, while non-pregnant employees were not. ECF No. 4 ¶ 39. When non-pregnant employees had medical appointments or needed time off for personal reasons, it was given to them without questions, yet Plaintiff was required to give a doctor's note or other justification. ECF No. 4 ¶ 39.

On June 8, 2012, Plaintiff received a negative work performance review, listing nine areas which needed improvement. ECF No. 4 ¶ 40; ECF No. 4, Exhibit 3. Areas for improvement included a high frequency of errors in Plaintiff's work, excessive lateness, and failure to give notice for her regular absences. ECF No. 4, Exhibit 3. She was relieved of performing some of her initial job duties. ECF No. 4, Exhibit 3. On June 28, 2012, Plaintiff had a meeting with Casey in which she raised her concerns, but he dismissed her complaints and admonished her. ECF No. 4 ¶ at 44. On November 19, 2012, Plaintiff received another negative performance evaluation, in which she was below satisfactory in the majority of categories. ECF No. 4 ¶ 46, Exhibit 5. While she met the standard in "equipment," and "specific job skills," and exceeded the standard in "guest relations," she was below standards in "cooperation," "initiative," and "patient information," and failed for "attendance and punctuality." ECF No. 4 ¶ 46, Exhibit 5. Her areas listed as needing development were her tardiness, absenteeism, and work performance, with the summary that "after repeated warnings both verbal and written there has been moderate improvement but unfortunately there has not been enough of an improvement to warrant continued employment and the company has decided to terminate her employment." ECF No. 4, Exhibit 5. On November 27, 2012, Dehne and Casey conducted a meeting with Plaintiff to discuss her performance evaluation, and asked her to resign. ECF No. 4 ¶¶ 48-49. Plaintiff refused, and was terminated by Casey and Dehne. ECF No. 4 ¶ 51.

**C. Additional Facts Alleged**

In her proposed Amended Complaint, Plaintiff alleged additional facts relevant to the instant motion. ECF No. 31. She specifically alleged that both Casey and Dehne exercised supervisory control over her. ECF No. 31 ¶ 25. She also stated that in her June 28, 2012 meeting with Casey, Casey blamed Plaintiff for revealing her pregnancy to Dehne, saying that Dehne was entitled to her own personal opinion on the matter; Plaintiff grew extremely upset and embarrassed, began to cry, and left the meeting in distress. ECF No. 31 ¶ 46. After this incident, Plaintiff did not feel comfortable addressing Casey in person, and he did not respond to her multiple attempts to address the issue by email. ECF No. 31 ¶ 47.

Plaintiff alleged that in October of 2012 Dehne refused to drive her to the Emergency Room—citing fears of liability—despite Plaintiff's sharp pain in her stomach while at work. ECF No. 31 ¶ 48. In October 2012, Dehne also told another employee that Plaintiff had a miscarriage, and knowing that others were discussing her condition, combined with daily humiliation and discrimination, interfered with Plaintiff's work performance. ECF No. 31 ¶¶ 49-50. Such constant humiliation and embarrassment caused Plaintiff anxiety attacks, low self-esteem, and depression, requiring treatment by her obstetrician/gynecologist. ECF No. 31 ¶ 51.

Plaintiff further alleged that the administrative discipline imposed by Casey and Dehne was not performed for the benefit of the company, but for their own personal satisfaction, motivated by personal bias. ECF No. 31 ¶ 65. She alleged that they imposed their personal opinions, and the administrative discipline was pretextual. ECF No. 31 ¶ 66. They harassed and berated Plaintiff due to her pregnancy, and on numerous occasions they discussed her pregnancy publically, using inappropriate remarks. ECF No. 31 ¶¶ 67-68.

## II. 12(b)(6) LEGAL STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). In deciding such a motion, a court must first be cognizant of the liberal pleading standards of Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ .P. 8. The Supreme Court has made it clear that a well-pleaded complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must take "the material allegations of the complaint" as admitted, and liberally construe the complaint in favor of a plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *see Randall v. United States*, 30 F.3d at 522 ("[T]his court must accept as true all well-pleaded allegations and must construe the factual allegations in the light most favorable to the plaintiff."). However, simple "legal conclusion[s] . . . [are] not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 555).

## III. ARGUMENT

### A. Individual Supervisor Liability

Plaintiff argues that Dehne and Casey should be held personally liable, as employers of Plaintiff under Title VII. Title VII makes it unlawful for an employer "(1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1994). It further defines an "employer" as "a person engaged in industry affecting commerce who has fifteen or more employees . . . and any agent of such a person." *Id.* § 2000e(b).

Plaintiff relies on *Paroline v. Unisys Corp*, to apply this definition of "employer" to an individual supervisor. *See Paroline v. Unisys Corp.*, 879 F.2d 100 (4th Cir.1989), *vacated in part on other grounds*, 900 F.2d 27 (4th Cir.1990) (holding a supervisor personally liable for sexual harassment when he served in a supervisory position and exercised significant control over plaintiff's hiring, firing, or conditions of employment). *Paroline* and the other cases cited by the parties, however, are outdated; as early as 1994 the Fourth Circuit had narrowed the *Paroline* holding by interpreting language in the ADEA identical to that of Title VII to eliminate supervisor liability for "personnel decisions of a plainly delegable character." *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 n.1 (4th Cir. 1994); *see Stephens v. Kay Mgmt. Co.*, 907 F. Supp. 169, 173 (E.D. Va. 1995) ("Therefore, the precedential value of that part of *Paroline* which holds that supervisory employees exercising significant control over personnel decisions can be held individually liable, has been curtailed significantly by the Fourth Circuit's subsequent decision in *Birkbeck* which forecloses individual liability for personnel decisions of plainly delegable nature.").

Plaintiff and Supervisory Defendants disagree over the appropriate application of *Paroline* and *Birkbeck*, and it is true that from 1994 until 1998 there was a split among lower courts, which "grappled with the issue of whether the logic underlying Birkbeck's holding . . . should control when interpreting Title VII's similar definition of 'employer.'" *White v. CMA Const. Co.*, 947 F. Supp. 231 (E.D. Va. 1996); *see e.g.*, *Michael v. Sentara Health Sys.*, 939 F. Supp. 1220 (E.D. Va. 1996); *Shoemaker v. Metro Info. Servs.*, 910 F. Supp. 259 (E.D. Va. 1996); *Stephens v. Kay Mgmt. Co.*, 907 F. Supp. 169 (E.D. Va. 1995); *Mitchell v. RJK of Gloucester, Inc.*, 899 F. Supp. 246 (E.D. Va. 1995); *Lane v. David P. Jacobson & Co.*, 880 F. Supp. 1091 (E.D. Va. 1995).

The debate which both parties labor to win, however, has been definitively settled by the Fourth Circuit.[2] While once a matter of speculation, the Fourth Circuit has now specifically and explicitly extended *Birkbeck* to Title VII. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998) ("Reading Title VII to foreclose individual liability represents the only logical extension of *Birkbeck*."). Utilizing the similarities between Title VII and the ADEA, the 1991 amendments to Title VII, and the dominant opinion among other circuit courts, the Fourth Circuit unequivocally declared, "[w]e join these courts and reiterate that supervisors are not liable in their individual capacities for Title VII violations." *Id*. at 181.

No longer limited to simply "non-delegable duties," as in *Birkbeck*,[3] supervisors are simply not liable under Title VII. *See Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) ("We have expressly held that Title VII does not provide a remedy against individual defendants who do not qualify as 'employers.'"); *Keck v. Virginia*, 2011 WL 4589997, at *17 (E.D. Va. Sept. 9, 2011) *report and recommendation adopted*, 2011 WL 4573473 (E.D. Va. Sept. 30, 2011) *aff'd*, 470 F. App'x 127 (4th Cir. 2012) ("The Fourth Circuit has held that the inclusion of the term 'agent' does not impose liability on individual employees and instead establishes a limit on an employer's liability."); *Jones v. Tyson Foods, Inc.*, 378 F. Supp. 2d 705, 708 (E.D. Va. 2004) *aff'd sub nom. Jones v. Tyson Foods*, 126 F. App'x 106 (4th Cir. 2005) ("The Fourth Circuit's decision in *Lissau* makes it clear that an employee who claims that she

---

[2] In their defense, it appears that this oversight is not unique to these parties. *See Jones v. Tyson Foods, Inc.*, 378 F. Supp. 2d 705, 708 (E.D. Va. 2004) *aff'd sub nom. Jones v. Tyson Foods*, 126 F. App'x 106 (4th Cir. 2005) ("Plaintiff . . . ignores the fact that the Fourth Circuit Court of Appeals overruled *Paroline,* with its decision in *Lissau v. Southern Food Service, Inc.,* 159 F.3d 177 (4th Cir.1998). The Court in *Lissau* specifically held that supervisors are not individually liable for violations of Title VII.").

[3] The cases from 1994 to 1998 arrived at the conclusion that supervisors were only liable for actions categorized as "non-delegable duties," which was a class of exactly one: sexual harassment. *Williamson v. Virginia First Sav. Bank*, 26 F. Supp. 2d 798, 805 (E.D. Va. 1998) ("The only type of management conduct that has been found to *not* be of a plainly delegable character is sexual harassment.").

has been sexually harassed in the workplace must make her claim against her employer and not against the supervisor whom she claims sexually harassed her."); *Johnson v. Quin Rivers Agency for Cmty. Action, Inc.*, 128 F. Supp. 2d 332, 335 (E.D. Va. 2001) ("Individual supervisors have no personal liability under Title VII or the ADEA because they are not 'employers' within the meaning of either statute.").

Here, Casey and Dehne were both clearly Plaintiff's supervisors. ECF No. 4 at ¶¶ 21, 22; Casey Dep. 9:1-2; Dr. G. Peyton Neatrour Dep. 20:8-14. They were directly involved in the decisions of hiring, reviewing, disciplining, and firing Plaintiff. ECF No 4 at ¶¶ 39-47; Casey Dep. 20:13-21:8; 34:1-5; 34:12-24; 35:8-36:5; Parker Dep. 53:18-25. Further, Plaintiff specifically alleges this in her amended complaint. ECF No. 31 ¶ 25. They therefore do not qualify as her "employer," are not subject to Title VII, and are not subject to suit in this case. At one point it may have been necessary to determine whether their conduct was "plainly delegable," but *Lissau* makes it clear that this inquiry is no longer necessary. Even with Plaintiff's amended complaint, alleging the personal animus and bias as motivation for the termination,[4] Supervisory Defendants Casey and Dehne are not liable under Title VII.

**B. Failure to Exhaust**

Before suing under Title VII, an individual must file an administrative charge with the EEOC, alleging unlawful discrimination. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009)("[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim.").

---

[4] According to *Twombly* and *Iqbal*, conclusions of law are not given controlling weight. *Iqbal*, 556 U.S. at 680("[L]egal conclusion[s] . . . [are] not entitled to the assumption of truth.") (citing *Twombly*, 550 U.S. at 555)). Some of the statements in the amended complaint could arguably be characterized as conclusions of law, and therefore not accepted as true. That determination is not necessary here, however, because even if all claims made in the Amended complaint are accepted as true, Plaintiff fails to state a claim for which relief can be granted.

Supervisory Defendants argue that plaintiff failed to exhaust her administrative remedies by inadequately naming Casey and Dehne in her EEOC Complaint, while Plaintiff claims that describing their conduct in the addendum to the complaint is sufficient. This issue does not, however, need to be determined here. Based on the clear direction from the Fourth Circuit that an individual suit against Casey or Dehne is inappropriate, the Case should be dismissed without reaching the issue of exhaustion.

## IV. CONCLUSION

For the reasons stated herein, the undersigned RECOMMENDS that Supervisory Defendants' motion be GRANTED, and the complaint be dismissed regarding Defendant Peggy Dehne in her individual and official capacity, and dismissed regarding Defendant Martin Casey in his individual and official capacity

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and

recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/
Tommy E. Miller
United States Magistrate Judge

Norfolk, Virginia
October 21, 2014